UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARKITA STAMPS, Guardian
of Bahjanique Stamps,

      Plaintiff,                                     Civil Action No. 16-CV-14336

vs.                                          HON. BERNARD A. FRIEDMAN

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

      Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON PLAINTIFF'S FRAUD CLAIMS AND GRANTING IN
PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON PLAINTIFF'S NO-FAULT CLAIMS**

This matter is presently before the Court on defendant's motions for summary

judgment [docket entries 40 and 67]. Response and reply briefs have been filed. The Court heard

oral argument on defendant's first motion, concerning plaintiff's fraud claims, and permitted the

parties to conduct additional discovery and to file supplemental briefs. Defendant also filed a motion

for partial summary judgment on plaintiff's No-Fault claims. Pursuant to E.D. Mich. LR 7.1(f)(2),

the Court shall decide these motions without a further hearing.

Plaintiff Markita Stamps is the guardian of her cousin, Bahjanique Stamps, who was

injured in an automobile accident in July 2001 when she was five years old. Bahjanique's mother,

who was driving the car in which Bahjanique was a passenger, was killed. Bahjanique was raised

by her aunt, Delita Nash-Evans, who simultaneously raised her own daughter, Markita. Nash-Evans

was Bahjanique's guardian from 2001 until July 2016, at which time Markita became the guardian.

Because the car was uninsured, the claim was assigned to the Michigan Assigned

Claims Plan and then to State Farm. Bahjanique was badly injured. She was hospitalized for three weeks and needed extensive medical care afterwards, which State Farm covered. There is no claim in this case for outstanding medical bills. Rather, the issue is attendant care. During the first two months following the accident, State Farm paid Nash-Evans $4,860 in attendant care benefits. Over the next ten years, however, State Farm paid her a total of only $262.65. The apparent reason for this discrepancy is that State Farm paid for attendant care while Bahjanique was recovering from her physical injuries and stopped paying thereafter – except to reimburse Nash-Evans on a few occasions for time she spent taking Bahjanique to doctors' appointments – because neither Nash-Evans nor Markita Stamps submitted any claims for such benefits.

Markita Stamps is now suing for attendant care benefits she claims should have been paid continuously because Bahjanique suffered not only the obvious physical injuries but also a closed head injury that has required the guardians to provide extra care and supervision ever since the 2001 accident. Both guardians have testified that Bahjanique has behavioral and judgment problems that have required them to supervise her and remind her to do everyday things. While Bahjanique was in school, Nash-Evans alleges that she also gave Bahjanique her medications and spent a great deal of time helping Bahjanique with homework.

The need for attendant care allegedly is established by treatment notes and testimony of Dr. Charles Pelshaw, a pediatrician who treated Bahjanique from October 2001 until December 2013. Initially, he diagnosed "possible brain injury." Pelshaw Dep. (Pl.'s Ex. C) at 9. After seeing her in 2001, Dr. Pelshaw did not see Bahjanique again until March 2005, when Nash-Evans brought her back because she was having behavioral problems, including attention deficit, stealing, lying, aggressiveness, and school difficulties. He believed these problems were caused, at least in part, by

2

the head injury. *Id.* at 13. Neuropsych testing in 2006 documented behavioral and emotional problems (hyperactivity, aggression, attention deficit, etc.), as well as problems with dexterity and memory. Dr. Pelshaw prescribed medications. In January 2008, Dr. Pelshaw prescribed attendant care for "one hour a day on school days, two hours a day on non-school days for three months," but at his deposition he could not recall why he prescribed this. *Id.* at 40-41. He believes Bahjanique "did have attendant care needs," but he did not prescribe attendant care, except on this one occasion, because "if the case manager doesn't bring up attendant care, sometimes it's something that I don't necessarily think about." *Id.* at 41-42. "[P]robably a couple of hours a day every day, I think, would have been reasonable because the aunt had to do more than what the aunt of a normal [child would have to do]." *Id.* at 43. "Looking back on my chart, I wish that I had provided prescriptions for attendant care or that the case manager would have brought up the fact do you think attendant care is needed in this case." *Id.* at 44.

Dr. Pelshaw stopped seeing Bahjanique in December 2013 when, according to his notes, "State Farm had an IME done. Felt there was no cognitive residual deficits but did identify some learning deficits they weren't sure were correlated with her brain injury, and behavioral issues they felt were more psychological and psychiatric related." *Id.* at 53. Dr. Pelshaw believes Bahjanique's behavioral issues are related to her brain injury, but he cannot say to what extent. *Id.* at 57. Plaintiff does not appear to argue that State Farm was aware of Dr. Pelshaw's single attendant care prescription in 2008.

In 2016 – 15 years after the accident – plaintiff brought the instant action against State Farm. In Counts I and II of her amended complaint, plaintiff asserts claims for attendant care under Michigan's No-Fault Act. In Counts III through VI, she asserts claims for fraud/misrepresentation,

silent fraud, "misrepresentations and inequitable conduct," and "fraudulent concealment." In Count

VII, she seeks penalty interest and attorney fees.

***State Farm's Motion for Partial Summary Judgment on Plaintiff's Fraud Claims***

State Farm argues that even assuming attendant care benefits may have been payable

(which it does not concede), it is entitled to summary judgment on Counts III - VI because plaintiff

cannot establish all of the elements of fraud. Nor, State Farm argues, has plaintiff shown that it

deceived her about the availability of attendant care benefits. It argues that these benefits were not

paid (beyond the $262.65) because plaintiff did not submit any claims for further benefits.

The basis for plaintiff's fraud/misrepresentation claims is, essentially, that State Farm

told Nash-Evans that attendant care was not available, or that it could be paid only for taking

Bahjanique to medical appointments, and that State Farm did not tell Nash-Evans the full scope of

what is available under the No-Fault Act. Specifically, the complaint alleges the following five

instances of fraud: (1) that one of the claim representatives, Kristin Myslinski, told Nash-Evans in

2002 that "compensation for attendant care would not be available for the time spent supervising

Bahjanique" (Am. Compl. ¶ 23(a)); (2) that Myslinski told Nash-Evans in 2010 that she "could only

be compensated for the time she took Bahjanique to her medical appointments" (*id.* ¶ 23(b)); (3) that

despite telling Nash-Evans she could be compensated for taking Bahjanique to medical

appointments, State Farm did not fully compensate her for this (*id.* ¶ 23(c)); (4) that State Farm had

reason to know that Nash-Evans was dispensing medications to Bahjanique, but did not tell her she

could be compensated for the time she spent doing so (*id.* ¶ 34(e)); and (5) that when Nash-Evans

complained in December 2010 that the attendant care payment was inadequate, State Farm told her

the only compensation available to her was for the time she spent taking Bahjanique to medical

appointments (*id.* ¶ 34(f)).

Both sides cite *Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399 (2008), the leading

Michigan Supreme Court case on the issue of whether an insured may sue his No-Fault carrier for

fraud. The court answered this question in the affirmative:

> A fraud action is not an "action for recovery of [personal injury
> protection or PIP] benefits payable under [the No-Fault Act] for
> accidental bodily injury." Rather, in the context of an insurance
> contract, a fraud action is an action for recovery of damages payable
> under the common law for losses incurred as a result of the insurer's
> fraudulent conduct. There is a distinction between claiming that an
> insurer has refused to pay no-fault benefits to its insureds and
> claiming that the insurer has defrauded its insureds.

*Id.* at 407. As with any fraud claim, the plaintiff must show:

> (1) That [the insurer] made a material representation; (2) that it was
> false; (3) that when [the insurer] made it [the insurer] knew that it
> was false, or made it recklessly, without any knowledge of its truth
> and as a positive assertion; (4) that [the insurer] made it with the
> intention that it should be acted upon by [the] plaintiff; (5) that [the]
> plaintiff acted in reliance upon it; and (6) that [the plaintiff] thereby
> suffered injury. Each of these facts must be proved with a reasonable
> degree of certainty, and all of them must be found to exist; the
> absence of any one of them is fatal to a recovery.

*Id.* at 408 (quoting *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976)). The court

indicated that a fraud claim may also be based on "concealment of material facts." *Id.* Further,

"[w]here fraudulent conduct results in the loss, or reduced payment, of PIP benefits, plaintiffs are

entitled to seek damages for their entire loss, including the equivalent of the no-fault benefits." *Id.*

at 412. Finally, the Court held that fraud claims are not subject to the "one year back" rule that

applies in PIP cases to limit recovery to reimbursement of expenses incurred within one year prior

to the commencement of suit. *Id.* at 412-13.

State Farm concedes that under *Cooper* a fraud claim can be asserted by an insured against his No-Fault carrier. However, it cites two cases from this district for the proposition that an insurer has no duty to disclose to its insured all available No-Fault benefits that may be available. In *Dugan v. State Farm Mut. Auto. Ins. Co.*, 845 F. Supp. 2d 803, 807 (E.D. Mich. 2012), plaintiff asserted claims for silent fraud and misrepresentation, alleging that State Farm "did not disclose to Plaintiff all benefits available to her under the policy of insurance to which she may be entitled, including but not limited to attendant care benefits payable at commercially reasonable agency rates . . . ." The Court dismissed these claims because "plaintiff has failed to allege any specific misrepresentations made by defendant. Indeed, she only alleges she was not informed of benefits to which she 'may' be entitled." *Id.* at 808.

State Farm also cites *Wynn v. State Auto. Mut. Ins. Co.*, 856 F. Supp. 330, 334 (E.D. Mich. 1994), in which plaintiff sued his No-Fault carrier for negligence on the grounds that it "had reasonable notice of the fact that the Plaintiff Minor required first party No Fault benefits, and as such, Defendant was under a duty to so advise Plaintiff; Defendant negligently breached this duty by failing to inform and/or advise Plaintiff and/or Plaintiff minor of Plaintiff's entitlement to the entire gamut of first party No Fault benefits . . . ." The Court dismissed this claim because "[n]either the insurance contract nor the Michigan statute creates any duty on the part of Mutual Insurance to act as plaintiff's advisor with respect to informing him of the insurance benefits that are covered by the insurance contract or provided by statute." *Id.* at 335.

In the present case, plaintiff's fraud claims are significantly weakened by evidence that State Farm in fact did inform plaintiff about the availability of attendant care benefits and that plaintiff was aware of the availability of such benefits from other sources as well. For example,

State Farm points to a letter (Def.'s Ex. 19) dated May 1, 2002, to Nash-Evans from attorney Les

Braverman, who indicated he was terminating "our attorney-client relationship in terms of any third

or first party litigation," but urged her to "contact Christina at 734-458-6657 regarding medical bills

and attendant care, if necessary, for the children who were injured. Her address is State Farm

Insurance, P.O. Box 4093, Kalamazoo, MI 49003-4093. The claim number is K338-370." Kristin

Myslinski was the State Farm claim representative at the time.

> State Farm also points to a letter (Def.'s Ex. 22) dated June 13, 2002, to Nash-Evans

from Myslinski, stating:

> > This letter serves to advise that benefits on behalf of Bahjanique
> > Stamps . . . have been extended. All providers will be paid direct.
> > Should you receive bills or calls concerning this matter, please direct
> > them to my attention.
> >
> > A claim for attendant care (to provide services for activities of daily
> > living which Bahjanique could do before the accident such as feed,
> > toilet, ambulate etc.) was discussed at the time of our meeting. A
> > letter has been sent to both the neurosurgeon and orthopedic doctors,
> > who treated Bahjanique, to obtain a disability concerning this matter.

The referenced letters to the doctors are attached as Def.'s Ex. 23.

> State Farm also points to an August 28, 2002, letter from Myslinski to Nash-Evans

(Def.'s Ex. 25), stating that attendant care for July-September 2001 was being paid in the amount

of $4,860. Myslinski also invited Nash-Evans to call her if she had any questions or concerns.

> Finally, State Farm points to its November 28, 2007, letter (Def.'s Ex. 6) to Nash-

Evans, in which Myslinski wrote:

> > The Michigan No Fault Law provides for reimbursement of Personal
> > Injury Protection benefits for injuries sustained in the automobile
> > accident. This coverage includes reimbursement of reasonable and
> > necessary attendant care expenses incurred as a result of injuries

sustained in this loss.

Attendant care expenses may include, but are not limited to, the following services: assistance with bathing, toilet usage, grooming, wound care, and administering medication. We will need documentation from the treating physician in regard to the level of care and services you require.

If you require clarification of attendant care services, wish to present an attendant care claim, or need assistance completing the attendant care forms, please contact me at the number below.

Please be aware that according to the Michigan No-Fault Law, all claims for Personal Injury Protection benefits must be made within one year from the date the expense is incurred.

At her deposition, Nash-Evans claimed she either did not receive these letters or did not remember them. Nonetheless, plaintiff argues that certain entries from the claim file support her fraud claims. In particular, plaintiff points to Log Numbers 52, 55, 617, 621, and 622. These entries, which are attached to her response as Ex. B, state:

Log Number 53 (dated 8-27-02):

Rec'd attn care form from doctor. No response from Delita Nash, guardian. Dr noted attn care needed for the first month for bathing, toileting and feeding and assist with feeding only for approx 10 weeks. Rev'd disability with cat [sic] handlers. Bahjanique is 5 yrs old and would have needed supervisory care (24 hrs per day) due to her age alone. In looking at the added care needed, it was felt for the first month 10 hrs a day should cover the add'l time needed to bathe, dress, toileting, feed Bahjanique. Due to wound care, and all needs involved $15.00 per hr does not seem unreasonable. From 08-08-01 thru 09-28-01 Bahjanique needed assistance in feeding and dressing herself. 2-3 hours per day would seem reasonable. Due to unskilled care $10 appears reasonable. Calc exposure and sent letter to Delita Nash, Guardian. Also, discussed with management. Exposure is $4860.00 so probate will not be necessary (providers being paid direct).Will cal file for 15 for response from the Guardian. If no response, will issue draft made payment to Delita Nash as Guardian of Bahjanique Stamps. Putting file on cal for response.

Log Number 55 (dated 8-27-02):

Rec'd call from Ms Evans and discussed calculations on Attn Care. She agreed to same and would like to pick up draft tomorrow. . . .

Log Number 617 (dated 12-1-10):

Recd call from Delita (guardian) not happy with the recent check for her time going to appointments. She stated we have been asking her to do this & that and she cannot believe our payment for one year. Advised her one date not reimbursed due to the one year statute & she stated she understood same. Informed her the mileage was calculated & that draft issued but to date she had not received same. She would like to discuss our payments with CR therefore message to CR to return her call.

Log Number 621 (dated 12-1-10):

Spoke with Ms Evans. Advised I could not reimburse her for her lost wages but Only for the time she takes Bahjanique to her appts and meets with the doctors.[1] She is a minor and cannot be transported by herself and parent/guardian needs to be present. IP is in therapy sessions which were not included. Ms Evans will begin tracking all the appts, and submit her own documentation in the future.

Log Number 622 (dated 12-1-10):

Spoke with Case manager. She rec'd the same call from Ms Evans regarding underpayment. Discussed same. She did admit she did not include the appts with Dr. Lacombe. She is not sure she has the dates. Each appointment was an hour. Advised her Ms Evans is tracking her hours, and she can still submit Dr. Lacombe's DOS, however, advised of the one year statute.

Plaintiff argues that these entries show that State Farm knew Nash-Evans was entitled to claim substantial attendant care benefits, but falsely told her she could only be reimbursed for time she spent taking Bahjanique to medical appointments.

---

[1] At her deposition, Myslinski testified that by "only" she meant that Nash-Evans could only be compensated for attendant care, not lost wages, for time she spent taking Bahjanique to medical appointments. Myslinski Dep. (Def.'s Ex. 11) at 127-28.

Having considered the parties' arguments and evidence, the Court concludes that plaintiff has not shown that State Farm defrauded her. It is apparent from the above-quoted correspondence that Nash-Evans knew generally about her entitlement to attendant care benefits because (1) her own attorney, Braverman, mentioned them in his letter to her dated May 1, 2002, and he specifically directed her to contact Myslinski about "medical bills and attendant care"; (2) Myslinski's letters to Nash-Evans in June and August 2002 and November 2007 specifically mentioned attendant care and, indeed, a $4,860 payment for attendant care was made to Nash-Evans in late 2002; and (3) the log entries from December 2010 show that Nash-Evans objected to the low payment she had received for attendant care and complained to Myslinski and the case manager, Nault. Further, Nash-Evans admitted at her deposition that no one at State Farm ever lied to her or told her certain no-fault benefits were unavailable. Nash-Evans Dep. (Def.'s Ex. 13) at 74-75. She also admitted that she never had a prescription for attendant care and that she never submitted any documentation to State Farm in support of a claim for attendant care benefits. *Id.*

The most that plaintiff has shown is that State Farm neglected to tell her that she might be entitled to more attendant care benefits – i.e., not only for the time she spent taking Bahjanique to medical appointments, but also the time she spent supervising her and giving her medications. But this claim fails because, as the court stated in *Wynn*, "[n]either the insurance contract nor the Michigan statute creates any duty on the part of [a No-Fault insurer] to act as plaintiff's advisor with respect to informing him of the insurance benefits that are covered by the insurance contract or provided by statute." *Wynn*, 856 F. Supp. at 335. This rule was also applied in a case not cited by the parties, *Converse v. Auto Club Grp. Ins. Co.*, No. 293303, 2011 WL 744940 (Mich. Ct. App. Mar. 3, 2011), *rev'd in part on other grounds*, 493 Mich. 877 (2012). In

that case, plaintiff sued her No-Fault carrier for fraud and silent fraud on the grounds that it had

failed to disclose all of the benefits available to her in caring for her injured child. In affirming the

dismissal of these claims, the Michigan Court of Appeals stated:

> The trial court correctly concluded that there was no genuine issue of
> material fact regarding whether Converse reasonably relied on
> ACIA's alleged representations. The record demonstrates that
> Converse complained about ACIA on three separate occasions to the
> insurance commission, and was put on notice by the commission "to
> seek out a lawyer." Converse also acknowledged having contact with
> attorneys throughout the years to assist her with various matters
> relating the services to be provided to her daughter. The alleged
> representations by ACIA's agents did not involve information that
> was primarily or exclusively within ACIA's control, but "concerned
> what benefits were available" to her under the no-fault act. Because
> Converse consulted with attorneys, complained to the insurance
> commission, negotiated directly with the insurer, had access to
> information and, thus, had available to her the means to ascertain the
> accuracy or truth of ACIA's statements, she was unable to
> demonstrate that she reasonably relied on ACIA's representations. In
> addition, because the alleged representations occurred during the
> claims handling and negotiation process, the reliance element is not
> established "because during these processes the parties are in an
> obvious adversarial position and generally deal with each other at
> arm's length." Converse's claims of fraud and silent fraud were,
> therefore, properly dismissed by the trial court.

*Id.* at *3 (quoting *Cooper*, 481 Mich. at 415) (footnotes omitted).

The same principles defeat plaintiff's fraud claims in the present case. Although the

fairness of the rule is debatable, an insurer has no duty to act as its insured's advisor and inform

him/her of all benefits that may be available. There being no such duty because of the parties'

adversarial relationship during the claims process, plaintiff cannot base a fraud claim on State Farm's

failure to inform her that she was entitled to a certain category of attendant care benefits, i.e.,

compensation for the extra hours per day she spent supervising Bahjanique due to her behavioral

problems. In addition, to the extent State Farm may have failed to inform plaintiff of her right to attendant care, plaintiff cannot show that she reasonably relied on any such silence because (1) State Farm had no duty to inform her, and (2) plaintiff had other means of discovering the extent of her rights – namely, by consulting with a lawyer, Braverman, which she did for a short time after the accident. As the court stated in *Converse*, "[t]here can be no fraud where a person has the means to determine that a representation is not true." *Id.* at \*2 (citing *Nieves v. Bell Indus., Inc.*, 204 Mich. App. 459, 464 (1994)). Moreover, the evidence shows that State Farm clearly did inform plaintiff, through Nash-Evans, that she was entitled to seek attendant care benefits. In at least two letters to Nash-Evans, Myslinski specifically described the types of services which may be compensable as attendant care and invited Nash-Evans to call her if she needed clarification or assistance completing attendant care forms.

In short, while State Farm could have done more to inform plaintiff of her entitlement to attendant care benefits, it was under no duty to do so. Nash-Evans has known about attendant care since at least May 2002 when attorney Braverman wrote to her about such benefits and encouraged her to contact State Farm if she had any questions about it, and in 2010 she complained to State Farm that the attendant care benefits it had paid her were inadequate. As no reasonable jury could find in plaintiff's favor on her fraud claims, the Court shall grant summary judgment for State Farm on Counts III-VI.

*Defendant's Motion for Partial Summary Judgment Regarding Allowable Expenses and the One-Year-Back Rule*

In this motion, defendant first seeks a ruling that the one-year-back provision of

Michigan's No-Fault Act[2] applies and is not tolled by plaintiff's allegations of fraud. In response, plaintiff acknowledges that the one-year-back generally applies to limit the insured's recovery in PIP cases, but she argues that "an insurer's fraud is an exception" to this rule. Plaintiff points to the Michigan Supreme Court's statement in *Devillers v. Auto Club Ins. Ass'n*, 473 Mich. 562, 590 (2005) (footnotes omitted), that "[a]lthough courts undoubtedly possess equitable power, such power has traditionally been reserved for 'unusual circumstances' such as fraud or mutual mistake." Plaintiff also points to *Paquette v. State Farm Mut. Auto Ins. Co.*, No. 279909, 2009 WL 2168918, (Mich. Ct. App. July 21, 2009) (unpublished), which held that the one-year-back rule does not apply when plaintiff proves fraud.

Defendant's position is clearly correct. In *Devillers*, the Michigan Supreme Court held that "[t]he one-year-back rule of MCL 500.3145(1) must be enforced by the courts of this state

---

[2] This rule is codified at Mich. Comp. Laws § 500.3145(1), which states:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury.

as our Legislature has written it, not as the judiciary would have had it written." 473 Mich. at 586.

While plaintiff correctly quotes the sentence from that case concerning the availability of "equitable power . . . for unusual circumstances such as fraud," the next sentence of the opinion admonished that "[a] court's equitable power is not an unrestricted license for the court to engage in wholesale policymaking, as Justice Cavanagh implies." *Id.* at 562 (footnote omitted). The court specifically disallowed the application of "judicial tolling" to defeat the one-year-back rule, *id.* at 584-85, and it reaffirmed this ruling in *Cameron v. Auto Club Ins. Ass'n*, 476 Mich. 55, 62 (2006), by holding that "the minority/insanity tolling provision in MCL 600.5851(1) does not operate to toll the one-year-back rule of MCL 500.3145(1)." *See also Joseph v. Auto Club Ins. Ass'n*, 491 Mich. 200, 222 (2012) ("The minority/insanity tolling provision in MCL 600.5851(1) does not apply to toll the one-year-back rule in MCL 500.3145(1) because the one-year-back rule is a damages-limiting provision and does not concern when an action may be brought.").

Plaintiff correctly notes that the one-year-back rule does not apply when, as in *Paquette* and *Cooper*, the insured shows that the insurer committed fraud. In the present case, however, plaintiff has failed to make this showing. As a result, this is strictly a PIP case, not a fraud case, and the one-year-back rule applies to limit plaintiff's recovery, if any, to the period of time commencing one year before she filed suit.

Defendant also seeks a ruling that plaintiff is not entitled to benefits because she "has not presented any evidence that attendant care was provided or incurred" and that she is not entitled to penalty interest or attorney fees "because the benefits at issue are not due." Def.'s Summ. J. Br. at 12, 23. The Court shall deny defendant's motion as to these issues because the facts are disputed as to the amount of attendant care Markita provided to Bahjanique, whether Bahjanique had a need

14

for such care as a result of her 2001 automobile accident, and the point in time when defendant became aware that Bahjanique was receiving such care. Plaintiff concedes that she "has not billed for her services," Pl.'s Br. at 8, and she testified that she has nothing in writing that shows the amount of care she has provided. Markita Stamps Dep. at 36. Nonetheless, the Michigan Supreme Court has held that "a caregiver's testimony can allow a fact-finder to conclude that expenses have been incurred," *Douglas v. Allstate Ins. Co.*, 492 Mich. 241, 270 (2012), and Markita has testified that she has provided Bahjanique with this care on a regular basis since becoming Bahjanique's guardian in July 2016. *See* Markita Stamps Dep. at 25-57. The value of these services is a matter for the jury to decide. *See Booth v. Auto-Owners Ins. Co.*, 224 Mich. App. 724, 729 (1997).

Finally, defendant argues that it had no notice of plaintiff's claim for attendant care because neither guardian ever submitted a claim. When asked at her deposition if she "ever submit[ted] anything in writing to State Farm such as a letter saying . . . I'm taking care of my sister and I'm asking for reimbursement," plaintiff responded, "No, because I didn't know about any of this." Markita Stamps Dep. at 52. Plaintiff argues that defendant had notice from Bahjanique's medical records, and from the claims file, that Bahjanique was receiving attendant care.

Even if defendant had no earlier notice of this claim, certainly the filing of the instant lawsuit (in September 2016) put defendant on notice that plaintiff was seeking reimbursement for attendant care. Further, the claims representative assigned to Bahjanique's file beginning in 2011 testified that she was aware Bahjanique had a guardian who attended medical appointments with Bahjanique and gave her medications. Toutant Dep. at 72, 79. By the time of plaintiff's deposition (in May 2017), defendant would have been on notice as to the extent of the attendant care claim in this case. It will be for the jury to determine when, if ever, defendant received "reasonable proof of

15

the fact and of the amount of loss sustained," Mich. Comp. Laws § 500.3142(2), as penalty interest and attorney fees are owed only if defendant fails to pay a claim within 30 days after receiving such proof. Accordingly,

IT IS ORDERED that defendant's motion for partial summary judgment on Counts III-VI [docket entry 40] is granted.

IT IS FURTHER ORDERED that defendant's motion for leave to file an additional motion for partial summary judgment [docket entry 66] is granted.

IT IS FURTHER ORDERED that defendant's motion for partial summary judgment regarding allowable expenses and the one-year-back rule [docket entry 67] is granted in part and denied in part as follows: the case will proceed on plaintiff's claim for attendant care (Counts I, II, and VII), but recovery on this claim is limited to the period of time commencing one year prior to the filing of the complaint.

Dated: August 23, 2018          s/Bernard A. Friedman
Detroit, Michigan               BERNARD A. FRIEDMAN
                                SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 23, 2018.

                                s/Johnetta M. Curry-Williams
                                Case Manager